In re AIR CRASH DISASTER NEAR HONOLULU, HAWAII, ON FEBRUARY 24, 1989.

This Document Relates To: All Actions.

No. MDL–807.

United States District Court, N.D. California.

Jan. 8, 1992.

Keith Gerrard, John D. Dillow, Scott F. Seablom, Perkins Coie, Seattle, Wash., for Boeing Co.

Gregory C. Read, David E. Mauldin, Sedgwick, Detert, Moran & Arnold, San Francisco, Cal., for United Airlines, Inc.

Juanita Madole, Speiser, Krause, Madole & Cook, Irvine, Cal., L. Richard Fried, Jr., Cronin, Fried, Sekiya, Kekina & Fairbanks, Honolulu, Hawaii, Bruce A. Lampert, Scha-

den, Swanson & Lampert, Denver, Colo., Andrew P. Lamis, Lieff, Cabraser & Heimann, Richard Brown, Belli, Belli, Brown, Manzione, Fabbro & Zakaria, San Francisco, Cal., Gary M. Mogil, Wasserman, Comden & Casselman, Tarzana, Cal., James R. Collins, O'Reilly & Collins, Menlo Park, Cal., John S. Carroll, Carroll, Smith & Buchli, Honolulu, Hawaii, Michael R. Devitt, Beus, Gilbert & Morrill, Phoenix, Ariz., Edward I. Stillman, Miller, Stillman & Bartel, Cleveland, Ohio, Walter H. Walker, III, Law Offices of Walter Walker, San Francisco, Cal., Howard E. Shafran, F. Lee Bailey & Aaron J. Broder, New York City, James J. McCarthy, Magana, Cathcart, McCarthy & Pierry, Los Angeles, Cal., Ned Good, Pasadena, Cal., for plaintiffs.

## ORDER

WALKER, District Judge.

On August 13, 1990, this court ruled that the Death on the High Seas Act, 46 U.S.C.App. §§ 761 et seq. ("DOHSA"), was a necessary cause of action for the plaintiffs asserting wrongful death claims in this case, which arose in connection with the mid-air accident involving United Airlines Flight 811 on February 24, 1989. The court further held that DOHSA provides only pecuniary damages to surviving dependents, and therefore precludes the availability of non-pecuniary damages for those plaintiffs either under general maritime law or under state law, whether asserted as part of plaintiffs' wrongful death cause of action or as a survival action brought on behalf of a decedent's estate. The court reasoned that Congress' statutory tort scheme created by DOHSA should not be eviscerated by the addition of common law or state remedies not consistent with DOHSA.

The court expressly left unresolved the issue of whether the Warsaw Convention[1] provides a basis for awarding the non-pecuniary damages not provided for by DOHSA. The court noted further that, although plaintiffs asserting only DOHSA claims were not entitled to a trial by jury, the availability of a meaningful, non-DOHSA basis for relief under the Warsaw Convention would permit the wrongful death plaintiffs to demand a jury trial on all of their claims.

Counsel for plaintiffs and defendants have fully briefed this issue, and the court heard argument at the December 3, 1991 status conference in this matter. Subsequently, counsel submitted a series of letter briefs to the court which contained further discussion of the Warsaw issues. The court has considered the arguments of counsel and the motions, briefs and other documents submitted in relation to this issue.

## I. AVAILABILITY OF DAMAGES FOR PRE–DEATH PAIN AND SUFFERING UNDER THE WARSAW CONVENTION.

▉ A treaty entered into by the United States is the supreme law of the land. U.S. Const., Art. VI, Cl. 2. As such, a treaty "is as much to be regarded by the court as an act of Congress." *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801). Treaty provisions which create domestic law have the same effect as legislation, and supersede previous conflicting legislation. *In re Aircrash in Bali, Indonesia on April 22, 1974*, 684 F.2d 1301, 1309 (9th Cir.1982). By contrast, the judge-made general maritime law, like land-based common law, can be and often has been altered or supplemented by act of Congress. Grant Gilmore and Charles L. Black, *The Law of Admiralty* § 1–16 (2d ed. 1975).

▉ Thus, while the court's obligation in determining the applicability of the general maritime law in a case also governed by DOHSA is to ensure that judge-made law does not "nullify" DOHSA provisions, the court's determination of the Warsaw issue must give effect to the provisions of both the Warsaw treaty and DOHSA. Further-

---

1. Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), reprinted in note following 49 U.S.C.App. § 1502 ("Warsaw Convention" or "Convention").

more, to the extent that the two laws directly conflict, the Warsaw Convention, ratified by the United States Senate in 1934, supersedes the conflicting provisions of DOHSA, which was enacted in 1920.

When interpreting a treaty, the court begins "with the text of the treaty and the context in which the written words are used." *Eastern Airlines v. Floyd*, —— U.S. ——, 111 S.Ct. 1489, 1493, 113 L.Ed.2d 569 (1991), *citing Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699, 108 S.Ct. 2104, 2107–08, 100 L.Ed.2d 722 (1988). Because the only authentic text of the Warsaw Convention is in French, the French text is where the court must begin its analysis. *Eastern Airlines*, 111 S.Ct. at 1493. The relevant text of Article 17 of the Convention reads as follows:

> Le transporteur est responsable du dommage survenu en cas de mort, de blessure ou de toute autre lesion corporelle subie par un voyageur lorsque l'accident qui a cause le dommage s'est produit a bord de l'aeronef ou au cours de toutes operations d'embarquement et de debarquement."

49 Stat. 3005.

The English language translation used by the Senate when it ratified the Warsaw Convention in 1934 is reproduced in a note following 49 U.S.C.App. § 1502. That text is:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the court of any of the operations of embarking or disembarking.

49 Stat. 3018.

Article 17, plainly read, creates an independent cause of action for damage sustained ("dommage survenu") where a passenger suffers death ("mort"), wounding ("blessure") or bodily injury ("lesion corporelle") while on board an aircraft, or while embarking or disembarking. This cause of action continues to exist after the death of the passenger, even though the Convention does not contain specific "wrongful death" or "survival" provisions.

In *In re Mexico City Aircrash of October 31, 1979*, 708 F.2d 400 (9th Cir.1983), the Ninth Circuit considered that this rule has not traditionally been the view of American courts. *Id.* at 409, *citing Choy v. Pan American Airways Co.*, 1941 Am. Mar.Cas. 483 (S.D.N.Y.1941). *See also Komlos v. Compagnie Nationale Air France*, 209 F.2d 436 (2d Cir.1953); *Noel v. Linea Aeropostal Venezolana*, 247 F.2d 677 (2d Cir.1957). However, the *Mexico City* court recognized that the court's conclusion in those earlier cases was premised on the rule, particular to common law jurisdictions, that the survivors of a decedent have no cause of action in the absence of a specific "wrongful death" or "survival" statute. *Mexico City*, 708 F.2d at 409, *citing The Harrisburg*, 119 U.S. 199, 213, 7 S.Ct. 140, 30 L.Ed. 358 (1886). *See also* W. Page Keeton, *Prosser and Keeton on Torts* §§ 125A–127 (5th ed. 1984). In civil law jurisprudence, by contrast, causes of action sounding in tort automatically survive the death of the victim. Stuart M. Speiser, *Recovery for Wrongful Death* § 16:12 (2d ed. 1975). In holding that Article 17 provides a wrongful death cause of action, the *Mexico City* court gave great weight to the Second Circuit's decision in *Benjamins v. British European Airways*, 572 F.2d 913, 919 (2d Cir.1978), which abandoned the earlier Second Circuit precedents and determined that Article 17 of the Convention provides an independent cause of action. *Mexico City*, 708 F.2d at 412. The court further observed that the drafters of the Convention, working from a civil law background, meant to create a cause of action that would exist without regard to the passenger's death. *Mexico City*, 708 F.2d at 412–16. Thus, the private right created by Article 17, as the product of civil law jurists, supports an action brought on behalf of a decedent's estate for the "damage sustained" prior to the death of the passenger.

The question of how to measure the "damage sustained" under the Warsaw Convention cause of action was left open

by the *Mexico City* and *Benjamins* courts. *Mexico City*, 708 F.2d at 415 n. 27. The Convention itself does not specify the elements of damages which a plaintiff might recover under Article 17. Instead, "[c]ommentators and case law are in accord that the Convention leaves the measure of damages to the internal law of parties to the Convention." *In re Air Disaster at Lockerbie, Scotland on December 21, 1988*, 928 F.2d 1267, 1283 (2d Cir.1991), *citing Harris v. Polskie Linie Lotnicze*, 820 F.2d 1000, 1002 (9th Cir.1987); *Mertens v. Flying Tiger Line, Inc.*, 341 F.2d 851, 858 (2d Cir. 1965).

Defendants propose that DOHSA is "undeniably the 'internal law' of the United States, to which the Warsaw Convention refers in these claims for deaths on the high seas." Defendant's Memorandum at 8. However, the court cannot agree. Reference to DOHSA for the sole measure of damages would misconstrue DOHSA's place in the scheme of tort recovery.

DOHSA was enacted in 1920 as part of a trend in common law jurisdictions to expressly provide a statutory remedy for wrongful death, because the common law had permitted no right to recovery. *See generally* Keeton, *Prosser and Keeton on Torts* § 127. In particular, DOHSA was a (somewhat belated) response to that portion of the Supreme Court's ruling in *The Harrisburg*, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), which held that absent a specific wrongful death statute, no recovery could be had for deaths on the high seas under the general maritime law. Moris Davidovitz, *Aviation Deaths on the Seas: The Flight into Maritime Law*, 10 Hastings Int'l & Comp.L.Rev. 57, 58 (1986). DOHSA is applicable only where, as in the case at bar, the death is caused by a wrongful act on the high seas one marine league, or three miles, from the shore of any United States territory. 46 U.S.C.App. § 761; Martin J. Norris, *The Law of Maritime Personal Injuries*, § 6:5 (4th ed. 1990).

The era of wrongful death statutes began with the passage by the English Parliament of Lord Campbell's Act, officially the Fatal Accidents Act of 1846, 9 & 10 Vict. ch. 93. Keeton, *Prosser and Keeton on Torts* § 127. Lord Campbell's Act, and the statutes which followed in other common law jurisdictions, reflected the opinion of most jurists of the age that the common law rule, in which it was cheaper for the defendant to kill a plaintiff than to injure him, was intolerable. *Id.* Today, of course, every state has a wrongful death statute and Congress has recognized wrongful death causes of action in tort statutes such as the Federal Employers' Liability Act, 45 U.S.C. §§ 51–59; the Jones Act, 46 U.S.C.App. § 688; and the Federal Tort Claims Act, 28 U.S.C. § 1346(b), as well as in DOHSA. The Supreme Court, recognizing the wide acceptance of wrongful death claims, overruled *The Harrisburg* in *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 409, 90 S.Ct. 1772, 1792, 26 L.Ed.2d 339 (1970) and held that a cause of action for wrongful death occurring on the territorial waters of the United States will lie under the general maritime law. Of course, the establishment by the Court of this remedy for deaths occurring on territorial waters did not, and could not, replace DOHSA as the substantive law governing wrongful death on the high seas.

The development of a cause of action for wrongful death, however, does not set as an absolute limit on a Warsaw Convention plaintiff's recovery the types of damages traditionally recoverable under such a statute. Prosser explains that common law jurisdictions currently provide for two distinct types of damages which arise upon a person's wrongful death: wrongful death damages and survival damages. Keeton, *Prosser and Keeton on Torts*, § 127. *See also* Gilmore, *Admiralty* § 6–30. In jurisdictions with separate causes of action for the two types of damages, the loss of pecuniary benefits to the decedent's survivors is allocated to the "wrongful death" action, and the pain and suffering, expenses and loss of earnings of the decedent up to the date of the decedent's death are allocated to the "survival" action, and thus to the estate. *Id.;* Speiser, *Recovery for Wrongful Death* § 14:1 (survival statutes protect

the damages which could have been recovered had the decedent lived).

The Warsaw Convention, as a product of civil law jurists, does not incorporate this common law distinction among the types of damages recoverable. Instead, civil codes typically create an undifferentiated remedy which applies wherever liability is established. Speiser, *Recovery for Wrongful Death* § 16:12. Grafted onto our common law tradition, and recognizing the Warsaw Convention's adoption of "internal law" with respect to the measure of damages, Article 17 must be read to create a cause of action which encompasses the remedies traditionally provided by common law in personal injury actions, wrongful death actions and survival actions. To hold, as defendants here assert, that DOHSA provides the full measure of damages where a passenger's death arises out of an incident covered by the Warsaw Convention would be to substitute a complete system of tort compensation with a partial remedy specifically created to rectify a recognized omission in the historical development of the common law.

█ In determining the measure of the "damage sustained" in the cases of passengers who died in connection with Flight 811, the court must look to the measure of damages in analogous "internal law" of the United States. Clearly, damages traditionally associated with a "wrongful death" cause of action are governed by DOHSA, as DOHSA is the directly applicable "wrongful death" statute in this case. Plaintiffs may also assert a "survival" cause of action, but there is no directly applicable "survival" statute from which to borrow for this portion of the Warsaw Convention cause of action. Although DOHSA does not contain a survival provision, DOHSA does not preempt alternate statutory survival remedies. *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1349 (9th Cir.1987) (a DOHSA claim for wrongful death can be supplemented by a Jones Act claim for a decedent's pre-death pain and suffering). *See also* Speiser, *Recovery for Wrongful Death* § 14:5. Furthermore, as discussed above, DOHSA could not preempt the survival remedy provided by the Warsaw Convention.

Analogous federal survival actions provide for the recovery of damages for the decedent's pre-death pain and suffering. The Jones Act and the Federal Employers' Liability Act, governing recovery for injuries sustained by seamen and railway workers, both provide remedy for non-pecuniary damages sustained by the decedent prior to his death. 46 U.S.C.App. § 688; 45 U.S.C. § 59. *Cook v. Ross Island Sand and Gravel Co.*, 626 F.2d 746, 749 (9th Cir. 1980). The general maritime cause of action created in *Moragne* also permits recovery for pre-death pain and suffering. *Evich v. Morris*, 819 F.2d 256 (9th Cir. 1987); Gilmore, *Admiralty* § 6–33. *Miles v. Apex Marine Corp.*, —— U.S. ——, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), in which the Court held that the *Moragne* cause of action does not permit damages for either loss of society or lost future earnings, does not affect recovery for pre-death pain and suffering under *Moragne*, because the Court's reasoning in *Miles* was premised on the Jones Act limit on recovery to losses suffered during the decedent's lifetime. *Miles*, 111 S.Ct. at 328. Pre-death pain and suffering is also an element of most states' survival statutes. Keeton, *Prosser and Keeton on Torts* § 126. *See also* Restatement, 2d of Torts §§ 924, 926.

Thus, by any plausible reference to the "internal law" of the United States, the "survival" component of the Warsaw Convention cause of action encompasses recovery for pre-death pain and suffering. Plaintiffs asserting causes of action on behalf of decedent passengers may recover for the pre-death pain and suffering of the decedent under the cause of action created by Article 17 of the Warsaw Convention.

## II. PLAINTIFFS' RIGHT TO A TRIAL BY JURY.

█ Claims under the Warsaw Convention are triable by jury. *In re Korean Air Lines Disaster*, 704 F.Supp. 1135, 1153 (D.D.C.1988). Suits in admiralty, including DOHSA suits, are traditionally tried to the court. Norris, *The Law of Maritime Per-*

**1266**

*sonal Injuries*, § 11:5. However, 28 U.S.C. § 1333 specifies that federal courts have jurisdiction over maritime actions, "saving to suitors in all cases all other remedies to which they are otherwise entitled." Under the "saving to suitors" clause, a plaintiff with claims in both admiralty and law may invoke either jurisdiction. *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 360, 82 S.Ct. 780, 783–84, 7 L.Ed.2d 798 (1962); *Chelentis v. Luckenbach S.S. Co.*, 247 U.S. 372, 384, 38 S.Ct. 501, 504, 62 L.Ed. 1171 (1918). Furthermore, when claims carrying a right to a jury trial are joined with admiralty claims, all claims may be tried to a jury. *Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 21, 83 S.Ct. 1646, 1650–51, 10 L.Ed.2d 720 (1963); *Korean Air Lines Disaster*, 704 F.Supp. at 1153. The Federal Rules of Civil Procedure specify that where a plaintiff brings a claim which could be brought in either law or admiralty, the plaintiff is deemed to be proceeding in law unless the plaintiff expressly elects the court's maritime jurisdiction. Fed.R.Civ.P. 9(h).

All of the plaintiffs here assert claims cognizable in law under the Warsaw Convention. None of the plaintiffs have invoked the court's admiralty jurisdiction. Accordingly, all claims will be tried to a jury.

### III. CONCLUSION.

1. Plaintiffs bringing suit on behalf of a decedent's estate may recover for the pre-death pain and suffering of the decedent under the Warsaw Convention.

2. All claims of all plaintiffs in this matter will be tried to a jury.

3. The clerk is directed to file the letter briefs received by counsel regarding the issues discussed in this order in the master docket for this action.

IT IS SO ORDERED.